IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
RAND PAUL, *et al.*,                          )
                                              )
                    Plaintiffs,               )
                                              )
          v.                                  )         Civil Action No. 14-cv-00262 (RJL)
                                              )
BARACK OBAMA, President of the                )
  United States, *et al.*,                    )
                                              )
                    Defendants.               )
_____         )

## OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Defendants, Barack Obama, President of the United States, James R. Clapper, Director of

National Intelligence, Admiral Michael S. Rogers, Director of the National Security Agency

(NSA),[1] and James B. Comey, Director of the Federal Bureau of Investigation, respectfully

submit this opposition to Plaintiffs' Motion for Class Certification, ECF No. 18, Apr. 1, 2014

("Pls.' Mot."), and Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Class

Certification, ECF No. 18-1, Apr. 1, 2014 ("Pls.' Mem.").

### INTRODUCTION

On February 18, 2014, Plaintiffs filed their Complaint claiming that the NSA's bulk

acquisition of telephony metadata under Section 215 of the USA-PATRIOT Act violates the

Plaintiffs' and the putative class members' Fourth Amendment rights. *See* Class Action Compl.

for Declaratory & Injunctive Relief, ECF No. 3, Feb. 18, 2014 ("Original Complaint"). The

Original Complaint defined the putative class as "All persons afforded protections under the

Fourth Amendment who made or received a cellular/wireless or terrestrial/landline telephone call

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Admiral Rogers is automatically
substituted as a party to this action in place of former NSA Director General Keith Alexander.

that originated and/or terminated in the United States after May 2006." Original Compl. ¶ 40.

Plaintiffs then amended their Complaint on March 26, 2014, *see* First Am. Class Action Compl.

for Declaratory & Injunctive Relief, ECF No. 17, Mar. 26, 2014 ("Amended Complaint" or

"FAC"), and moved for class certification. *See* Pls.' Mot. The Amended Complaint removed

from the class definition the requirement that members be "afforded protections under the Fourth

Amendment,"[2] FAC ¶ 40, and, consistent with that modification, the Plaintiffs' Motion for Class

Certification requests that the Court certify a class of "[a]ll persons who made or received a

cellular/wireless or terrestrial/landline telephone call that originated and/or terminated in the

United States after May 2006." *Id.* at 1.

As an initial matter, the Supreme Court has instructed that a court should hesitate to

certify a nationwide class action where, as here, doing so would "improperly interfere with the

litigation of similar issues in other judicial districts." *Califano v. Yamasaki*, 442 U.S. 682, 702

(1979). That is especially so in cases against the Government involving legal issues of

substantial public importance. *See id.*; *United States v. Mendoza*, 464 U.S. 154, 160 (1984).

Months ago, this Court anticipated that "other Article III Courts . . . [would] wrestle to find the

proper balance consistent with our constitutional system," in the "Judiciary's continuing

challenge to balance national security interests of the United States with the individual liberties

of our citizens." *Klayman v. Obama*, 957 F. Supp. 2d 1, 43 (D.D.C. 2013). Indeed, as discussed

in Section I, multiple pending cases have already produced two conflicting decisions that will be

reviewed by two Courts of Appeal. Certifying a class here would improperly interfere with the

---

[2] Aside from the modification of the putative class definition, the Amended Complaint differs
from the Original Complaint in various details such as substitution of the word "seizure" for the
word "collection," *compare, e.g.*, Original Compl. at 1, *with* FAC at 1; and new citations to
additional news reports, *see id.* at 6, n.3, as well as to a declaration filed in the Southern District
of New York in litigation regarding the lawfulness of the same NSA program, *see id.* at 7 n.4.

litigation of these issues in other fora, and would "substantially thwart the development of important questions of law." *Mendoza*, 464 U.S. at 160.

Furthermore, for three reasons, the proposed class definition does not satisfy the requirements of Federal Rule of Civil Procedure 23.  First, the putative class is too broad to satisfy Rule 23(a)(2)'s commonality requirement because it includes countless individuals who would not be entitled to relief even if Plaintiffs prevailed on their claim.  *See* Section II.A.  Second, Plaintiffs do not meet Rule 23(a)(3)'s typicality requirement because they have not established that they are members of the class they seek to represent.  *See* Section II.B.  And, third, for the same reasons that the putative class fails to satisfy Rule 23(a)(2), it also does not pass muster under Rule 23(b)(2); even if Plaintiffs' claim for injunctive relief succeeded, a single injunction would have no application to many members of the putative class.  *See* Section II.C.

For all of these reasons, the Court should deny Plaintiffs' Motion for Class Certification.

## ARGUMENT

I. **CLASS CERTIFICATION SHOULD BE DENIED BECAUSE IT WOULD THWART THE DEVELOPMENT OF IMPORTANT QUESTIONS OF LAW.**

The Supreme Court has instructed that "a federal court when asked to certify a nationwide class should take care to ensure that . . . certification of such a class would not improperly interfere with the litigation of similar issues in other judicial districts."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  As the Court observed, "nationwide class actions may have a detrimental effect by foreclosing adjudication by a number of different courts and judges."  *Id.*

Such concerns are magnified when (as here) issues of national importance are at stake. The benefit of allowing different courts to consider significant legal issues shaped the Supreme Court's decision in *United States v. Mendoza*, 464 U.S. 154 (1984).  There, the Supreme Court

held that nonmutual collateral estoppel should not apply against the Government to prevent "freezing the first final decision rendered on a particular legal issue." *Id.* at 160. The Court concluded that the "economy interests underlying a broad application of collateral estoppel are outweighed" by "the benefit [the Supreme Court] receives from permitting several courts of appeal to explore a difficult question before [the Supreme Court] grants certiorari." *Id.* at 160, 163. The Court reasoned that a contrary rule would "substantially thwart the development of important questions of law," *id.*, and that "allowing litigation in multiple forums" would "better allow thorough development of legal doctrine." *Id.* at 162–63; *see also, e.g.*, *Geraghty v. U.S. Parole Comm'n*, 719 F.2d 1199, 1205 (3d Cir. 1983) (affirming the district court's refusal to certify a nationwide class because it was "within the district court's discretion to conclude that classwide consideration of the legality of [federal] parole guidelines and the constitutionality of the [Parole Commission and Reorganization Act of 1976] might interfere with the litigation of similar issues in other judicial districts").

Consistent with the Supreme Court's guidance in *Yamasaki* and *Mendoza*, this Court should deny class certification. This Court has already noted the "significant national security interests at stake . . . and the novelty of the constitutional issues" in an action challenging the same Section 215 telephony metadata program. *Klayman*, 957 F. Supp. 2d at 43. Additionally, multiple cases pending in this and other fora have been brought by individuals who would be included in Plaintiffs' putative class. *See id.* at 7 (noting cases pending in New York, California, and Idaho). Those cases include *ACLU v. Clapper*, 13-cv-3994 (S.D.N.Y.) (complaint filed June 11, 2013); *Smith v. Obama*, 2:13cv-00257 (D. Idaho) (complaint filed June 12, 2013); *First Unitarian Church Los Angeles v. NSA*, 13-cv-3287 (N.D. Cal.) (complaint filed July 16, 2013); *Klayman v. Obama*, 13-cv-851 (D.D.C.) (complaint filed June 6, 2013); and *Klayman v. Obama*,

14-cv-00092 (D.D.C.) (complaint filed Jan. 23, 2014).  These cases have already produced

conflicting decisions regarding the constitutionality of the program at issue.  While this Court

found that Plaintiffs in another action are likely to succeed on the merits of their Fourth

Amendment claims, *see Klayman*, 957 F. Supp. 2d at 37, a different district court held that the

program is constitutional and dismissed the complaint, *see ACLU v. Clapper*, 959 F. Supp. 2d

724, 749–54 (S.D.N.Y. 2013).  These decisions are about to undergo review by the D.C. Circuit

Court of Appeals and the Second Circuit Court of Appeals, respectively.  *See Klayman v.

Obama*, No. 14-5004 (D.C. Cir.), *and ACLU v. Clapper*, No. 14-42 (2d Cir.).[3]

　　　In issuing its decision in *Klayman*, this Court anticipated that "[i]n the months ahead,

other Article III courts, no doubt, will wrestle to find the proper balance consistent with our

constitutional system."  957 F. Supp. 2d at 43.  That analysis by other Article III courts—

particularly of constitutional questions as important as those presented here—is precisely the

process the Supreme Court sought to promote in *Mendoza* and *Yamasaki*.  Certification of a class

in this case would foreclose adjudication by multiple courts, "improperly interfer[ing] with the

litigation of similar issues in other judicial districts," *Yamasaki*, 442 U.S. at 702, and depriving

the Supreme Court of the "the benefit it receives from permitting several courts of appeals to

explore a difficult question before [the Supreme Court] grants certiorari," *Mendoza*, 464 U.S. at

160.  For these reasons, alone, this Court should deny Plaintiffs' Motion for Class Certification.

---

[3] *See also*, *e.g.*, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. No. BR 14-01, Op. and Order (F.I.S.C. Mar. 20, 2014) (holding that the program in question is constitutional); *and United States v. Moalin*, 2013 WL 6079518, at *5–8 (S.D. Cal. Nov. 18, 2013) (upholding the constitutionality of the program, declining to order a new trial based on a Fourth Amendment challenge to the program).

## II.      PLAINTIFFS CANNOT MEET THEIR BURDEN UNDER RULE 23.

"To obtain class certification, [l]ead [p]laintiffs have the burden of demonstrating that the requirements of Federal Rule of Civil Procedure 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *In re Fannie Mae Secs. Litig.*, 247 F.R.D. 32, 36 (D.D.C. 2008).  Rule 23(a) provides that Plaintiffs must prove:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982) (alterations omitted)); *see also id.* ("actual, not presumed conformance with Rule 23(a) remains indispensable").  A failure to fulfill any of these four prerequisites "is 'fatal to class certification.'" *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 372 (D.D.C. 2011) (quoting *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006)).  In addition to these four requirements, because Plaintiffs here seek certification of a class under Rule 23(b)(2), *see* Pls.' Mem. at 10, Plaintiffs must prove that "final injunctive relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Importantly, rather than simply asserting that Rule 23's requirements have been satisfied, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *In re: Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 249 (D.C. Cir. 2013) (quoting *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2552); *id.* ("Rule 23

does not set forth a mere pleading standard").

Here, for the reasons explained below, the Plaintiffs' Motion for Class Certification cannot make such a showing.  Because the Plaintiffs cannot meet their burden under 23(a)(2), 23(a)(3), or 23(b)(2), this Court should deny the Plaintiffs' Motion.

### A.  The Proposed Class Definition Is Too Broad To Satisfy Rule 23(a)(2)'s Commonality Requirement.

Rule 23(a)(2) requires Plaintiffs to establish that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  That is, Plaintiffs' "'claims must depend upon a common contention' that is 'of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *DL v. Dist. of Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013) (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551).  This commonality requirement serves "to let the defendant know how to defend" and to guard against overbreadth in the class definition.  *Garcia v. Veneman*, 224 F.R.D. 8, 11 (D.D.C. 2004) (citing *Falcon*, 457 U.S. at 161).

Here, Plaintiffs argue that "[t]he dominant legal question of Defendants' Fourth Amendment violations is sufficient to meet the commonality requirement."  Pls.' Mem. at 7.  But the putative class is so broadly defined that even this general legal question—whether the challenged Government conduct is consistent with the Fourth Amendment—cannot bind its members.  As currently framed, the proposed class definition includes any individual who "made or received" even a single telephone call "that originated and/or terminated in the United States after May 2006."  *Id.* at 4.  Thus, although the Memorandum submitted in support of Plaintiffs' Motion for Class Certification frames its argument in terms of "hundreds of millions of Americans," *id.* at 2, and the Amended Complaint refers to "similarly situated United States citizens or permanent residents," FAC at 1, the putative class definition includes no restriction

- 7 -

related to residency or citizenship, and therefore sweeps in countless non-resident aliens outside the United States who have no connection with the United States beyond a single phone call.  For example, an Iraqi citizen who called New York one time in 2007 would be included.  In fact, a citizen of any other country would be included in the class if someone inside the United States accidentally dialed his phone number even once.

The Fourth Amendment does not extend so far; the Supreme Court has held that "the Fourth Amendment has no application" to non-resident aliens with no "significant voluntary connection with the Unites States."  *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271, 275 (1990).  And while the class definition proposed in the Original Complaint limited putative class members to persons "afforded protections under the Fourth Amendment," *see* Original Compl. ¶ 40, Plaintiffs removed that limitation, *see* FAC ¶ 40, and now apparently seek to represent a class consisting both of individuals who do not have Fourth Amendment rights, as well as those who do.  *See* Pls.' Mot. at 1.  The breadth of this putative class renders Plaintiffs' proposed common question unworkable; whether the NSA program at issue constitutes a violation of individuals' Fourth Amendment rights is not "capable of classwide resolution," *DL*, 713 F.3d at 125 (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551), as Rule 23(a)(2) requires, because countless individuals in the putative class do not have the Fourth Amendment rights from which such an inquiry must begin.

Although the legal issue addressed above is the only one Plaintiffs identify as being common to the class in support of their Motion for Class Certification, *see* Pls.' Mem. at 7, the Amended Complaint also lists the issue of whether "declaratory and injunctive relief, including the purging of the telephone metadata concerning Plaintiffs and class members from Defendants' database, is appropriate" as a "[c]ommon question[] of law."  Asking, generally, whether the

class is entitled to declaratory and injunctive relief cannot satisfy Rule 23(a)(2); if it did, every

action sounding in equity would possess the requisite "commonality."  And the sole basis for

relief asserted in this action is the Fourth Amendment.  *See* FAC ¶ 47.  Asking whether any

alleged violation of individuals' Fourth Amendment rights entitles them to relief raises the same

problems, discussed above, as asking whether those rights were violated in the first instance.

Therefore, for the same reasons the latter question does not satisfy Rule 23(a), the former

question also does not pass muster.

      Finally, the Amended Complaint claims that "[c]ommon questions of fact include the

extent of telephone metadata of all class members that has been and continues to be seized,

stored, retained, and searched by Defendants" under the Section 215 telephony metadata

program.[4]  FAC ¶ 42.  But these are not "common questions" at all; on the contrary, as framed,

these questions require individualized inquiries to determine whether the program at issue

reached the information of each individual class member.  Moreover, even if those

individualized questions were answered, those answers would not "resolve an issue that is central

to the validity of each one of the claims in one stroke," *DL*, 713 F.3d at 125, because each

---

[4]  While the NSA does not acquire metadata relating to all telephone calls to, from, or within the
United States, *see* Decl. of Teresa H. Shea, Mot. to Dismiss First FAC for Decl. and Injunctive
Relief, May 2, 2014, Ex. 3 ("Shea Decl.") ¶ 8, the Defendants note that these proposed "common
questions" regarding the scope of the program, are inconsistent with the balance of the Amended
Complaint in which Plaintiffs purport to know the scope of the program.  *See, e.g.*, FAC at 6
("The [Section 215 program] does not exempt the telephone metadata of anyone from its vast
database."); Pls.' Mem. at 7 ("The central legal issue in this matter is whether Defendants'
suspicionless, non-particularized seizure, storage, retention, and search of telephone metadata
related to every telephone call in, to or from the United States . . . .").  Additionally, determining
the precise scope of the bulk telephony metadata program, as contemplated by the Plaintiffs'
proposed common questions of fact, would implicate classified national security information, in
part because the identities of the carriers participating in the program (either now, or at any time
past), with the exception of a single provider named in a now-expired April 25, 2013 Secondary
Order from the Foreign Intelligence Surveillance Court ("FISC"), remain classified.  *See* Shea
Decl. ¶ 8.

putative class member's claim would still rise or fall based on whether that member had Fourth Amendment rights entitling him to relief in the first place.

In sum, there is no common issue that could bind this overbroad putative class. The inclusion of so many members who have no Fourth Amendment rights, and who therefore would not be entitled to relief even if Plaintiffs prevailed on their claims, renders class treatment inappropriate under Rule 23(a)(2). Furthermore, although a court might correct an overbroad class definition in some circumstances, *see Wagner v. Taylor*, 836 F.2d 578, 590–91 (D.C. Cir. 1987), this Court should deny class certification rather than attempt such modification here because the class representatives fail to fulfill the requirements of Rule 23(a)(3), *see* Section II.B below, and because under the principles articulated in *Yamasaki* and *Mendoza* class certification is not appropriate in this setting, *see* Section I. *See Wagner*, 836 F.3d at 590–91, 596 (noting that a court may modify a defective class definition, but affirming the district court's denial of class certification for failure to satisfy Rules 23(a)(2) and 23(a)(4)); *see also, e.g.*, *Black v. Premier Co.*, 2002 U.S. Dist. LEXIS 26461, at *18 n.8 (E.D. Pa. Aug. 13, 2002) (explaining that the court "[would] not attempt to remedy the faulty class definition" because, *inter alia*, the putative class representatives did not fulfill Rule 23(a)(3)'s typicality requirement).

**B.  Plaintiffs Have Not Established That Their Claims Are "Typical" of the Putative Class as Required by Rule 23(a)(3).**

Rule 23(a)(3)'s "typicality" requirement "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2550. At a minimum, under Rule 23(a)(3), "a class representative must be part of the class." *Falcon*, 457 U.S. at 156 (internal quotation omitted); *see also Virtue v. Int'l Bhd. of Teamsters Ret. & Family Prot. Plan*, 292 F.R.D. 8, 13 (D.D.C. 2013) ("Inherent in Rule 23 is the requirement that the class representatives be members of the class"). Here, because Plaintiffs

cannot demonstrate that they are members of the class they seek to represent, Plaintiffs cannot meet their burden under Rule 23(a)(3).

Although the class definition does not expressly refer to the program, the gravamen of the Amended Complaint is the contention that the NSA's bulk telephony metadata program under Section 215 of the USA-PATRIOT Act violates the Fourth Amendment. *See, e.g.*, FAC at 1. Plaintiffs state that they, "on behalf of themselves and [the putative class], bring this action for declaratory and injunctive relief against Defendants' mass, suspicionless, non-particularized seizure, storage, retention, and search of telephone metadata related to every domestic or international phone call made or received by Plaintiffs and class members . . . under the auspices of Section 215 . . . in violation of the Fourth Amendment." *Id.* Thus, to be eligible for relief under Plaintiffs' theory, a class member must have been subject to the intelligence-gathering program at issue. However, because Plaintiffs speculate that the Section 215 telephony metadata program included "every domestic or international phone call" made or received in the United States since 2006, *id.*, the proposed definition assumes that the every putative class member, including the named Plaintiffs, meets this requirement. Indeed, to establish their "typicality," Plaintiffs state:

> Plaintiffs' claims in this matter arise from the same course of conduct and are based on the same legal theory as the class members' claims—that Defendants' seizure, storage, retention, and searching of telephone metadata related to *every* telephone call in, to or from the United States, violates the Fourth Amendment.

Pls. Mem. at 8 (emphasis added); *see also* FAC ¶ 43 (arguing typicality on the grounds that "Plaintiffs and class members were and are subscribers, users, and/or consumers of telephone service . . . whose telephone metadata has been and continues to be seized . . . .").

Such speculation cannot fulfill Rule 23(a)(3). Especially following the Supreme Court's instruction in *Wal-Mart Stores, Inc.* that a party seeking certification "must affirmatively

demonstrate compliance" with Rule 23, and prove that its prerequisites are "in fact" satisfied, 131 S. Ct. at 2552, a showing of typicality cannot rest on speculation alone. *Id.* at 2551 ("Rule 23 does not set forth a mere pleading standard").  Upon "'prob[ing] behind the pleadings,'" *Virtue*, 292 F.R.D. at 13 (quoting *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551–52), as Rule 23 requires, it becomes apparent that Plaintiffs cannot meet their burden under Rule 23(a)(3).

Plaintiffs assert, "[u]pon information and belief, [that] *all* major telecommunications companies operating in the United States provide NSA on an ongoing daily basis telephone metadata for *all* telephone calls on their networks in, to or from the United States."  FAC ¶ 16 (emphasis added).  In support of that claim regarding all major telecommunications companies, the Amended Complaint refers to "[n]ews reports," that, according to Plaintiffs, "made it clear that the mass acquisition of Americans' call details . . . encompass[es] all wireless and landline subscribers of at least the country's three largest phone companies." *Id.* at 6 n.3.  Although the claim refers to "reports," the Plaintiffs cite only a single unsubstantiated newspaper article. *Id.*  Plaintiffs further claim, without citation to anything at all, that the NSA's program "does not exempt the telephone metadata of anyone from its vast database." *Id.* ¶ 16.  In their Motion for Class Certification, Plaintiffs cite this same paragraph of the Amended Complaint and assert "[t]here is evidence that all major telecommunications companies provide Defendants with telephone metadata for all telephone calls in, to or from the United States on their networks." Pls.' Mem. at 6.  But speculation in media reports regarding three companies is not evidence of those companies' involvement, much less evidence of the involvement of "all major telecommunications companies" in the Section 215 telephony metadata program. *See, e.g.*, *Tasini v. New York Times Co.*, 184 F. Supp. 2d 350, 357 n.8 (S.D.N.Y. 2002) ("[A]rticles and newspaper clippings do not rise to the level of competent evidence.  Newspaper articles are

simply not evidence of anything other than the fact they were published.").  Plaintiffs also claim that "[a]ccording to Defendants' public statements, all major American telecommunications companies provide Defendants with telephone metadata for all telephone calls on their networks in, to or from the United States, including calls of Plaintiffs and the putative class members." Pls.' Mem. at 3.  However, Plaintiffs provide no support for this assertion, *see id.*, and the facts are to the contrary.

The Declaration of Teresa H. Shea, Director of the Signals Intelligence Directorate at the NSA, submitted in support of the Defendants' Motion to Dismiss the First Amended Complaint, May 2, 2014, Ex. 3 ("Shea Decl."), clarifies that "[a]lthough there has been speculation that the NSA, under this program, acquires metadata relating to all telephone calls to, from, or within the United States, that is not the case."  Shea Decl. ¶ 8.  "The Government has acknowledged that the program is broad in scope and involves the collection and aggregation of a large volume of data from multiple telecommunications service providers, but . . . the program has never captured information on all (or virtually all) calls made and/or received in the U.S."  *Id.*  The Foreign Intelligence Surveillance Court ("FISC") noted as much in an opinion issued last year.  *In re Application of the FBI for an Order Requiring the Production of Tangible Things from [Redacted]*, Dkt. No. BR13-109, Am. Mem. Op. at 4 n.5 (F.I.S.C. Aug. 29, 2013) (publicly released, unclassified version) ("The production of all call detail records of all persons in the United States has never occurred under [the Section 215 telephony metadata] program.").

Indeed, Plaintiffs include a footnote in their Memorandum indicating that their statements regarding the scope of the program in that Memorandum refer to the program's *goals*, rather than its actual scope.  *See* Pls.' Mem. at 1 n.1 (arguing that "Defendants . . . have been clear that their goal is to collect metadata for all telephone calls in, to and from the United States").  The

footnote explains that, for purposes of Plaintiffs' memorandum in support of their Motion for

Class Certification, "'all' references Defendants' goal of seizing, storing, and retaining for

purposes of searching the metadata . . . for every telephone call in, to and from the United

States." *Id.* Thus, Plaintiffs effectively acknowledge the lack of evidence to support a claim that

the Section 215 telephony metadata program collects information on "all" calls to, from, or

within the United States.

Moreover, with one exception, "the identities of the carriers participating in the program

(either now, or at any other time) . . . remain classified." Shea Decl. ¶ 8. The sole exception is

that the Government has acknowledged the authenticity of an unlawfully disclosed (and now

expired) Secondary Order of the FISC dated April 25, 2013, which listed Verizon Business

Network Services, Inc. ("VBNS") as a recipient of that order. *Id.*; *see also In re Application of

the FBI for an Order Requiring the Production of Tangible Things from Verizon Business

Network Services, Inc.*, Dkt. No. BR 13-80, Am. Mem. Op. at 4 n.5 (F.I.S.C. Apr. 25, 2013).

While Plaintiffs assert that they subscribe to Verizon Wireless and AT&T telecommunications

services, FAC ¶¶ 4, 5, they do not claim that they have ever subscribed to services provided by

VBNS, a separate business entity from Verizon Wireless, *see United States ex rel. Shea v.

Verizon Bus. Network Servs., Inc.*, 904 F. Supp. 2d 28, 30 (D.D.C. 2012). Defendants recognize

that this Court has concluded in another suit that the Section 215 telephony metadata program

"*must* have collected metadata" regarding the calls of Verizon Wireless and AT&T subscribers

in order to "serve its putative function." *See Klayman*, 957 F. Supp. 2d at 27. But Defendants

respectfully submit that the Plaintiffs' subscription to Verizon Wireless and AT&T does not

establish that the NSA has collected telephony metadata regarding their communications. *See*

Defs.' Mem. in Support of Mot. to Dismiss, at 16–20.[5]

Because Plaintiffs offer no proof that information about their communications has been or will be collected under this program, they cannot establish membership in the class they seek to represent, and therefore cannot fulfill Rule 23(a)(3)'s "typicality" requirement.

### C.  The Overbreadth of the Proposed Class Renders Certification Under Rule 23(b)(2) Inappropriate.

Plaintiffs here seek certification under Rule 23(b)(2).  *See* Pls.' Mem. at 10.  "Rule 23(b)(2) allows class treatment 'only when a single injunction or declaratory judgment would provide relief to each member of the class."  *DL*, 713 F.3d at 125 (citation omitted).  "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Id.* (quoting *Wal-Mart Stores Inc.*, 131 S. Ct. at 2551).

Here, for the reasons discussed in Section II.A above, the putative class is too broad to satisfy this requirement.  Because the putative class includes countless members who have no Fourth Amendment rights and would not be entitled to relief even if Plaintiffs prevailed on their claims, Plaintiffs cannot fulfill the requirement that the challenged program "can be enjoined or declared unlawful only as to all of the class members or as to none of them."  *Id.* (internal quotation omitted).  On this ground, too, the Court should deny Plaintiffs' Motion for Class Certification.

---

[5] By order of the FISC, the most recent FISC decision affirming the lawfulness of the Section 215 program was published in redacted form on April 25, 2014 (along with related FISC filings), and the public version of these FISC materials continues to recognize the need to protect the identity of carriers subject to Section 215 orders pursuant to the Executive Branch's determination that disclosure of this information reasonably could be expected to cause harm to national security.  *See, e.g.*, *In re Application of the FBI for an Order Requiring the Production of Tangible Things*, Dkt. No. BR 14-10, Order at 1 (F.I.S.C. Apr. 11, 2014) (redacting the identity of the carrier).

**CONCLUSION**

The Defendants respectfully request that the Court deny Plaintiffs' Motion for Class

Certification.


Dated: May 2, 2014                     Respectfully submitted,

                                       STUART F. DELERY
                                       Assistant Attorney General

                                       JOSEPH H. HUNT (D.C. Bar No. 431134)
                                       Branch Director

                                       ANTHONY J. COPPOLINO (D.C. Bar No. 417323)
                                       Deputy Branch Director


                                        */s/ Julia A. Berman*
                                       JAMES J. GILLIGAN
                                       Special Litigation Counsel
                                       MARCIA BERMAN
                                       Senior Trial Counsel
                                       BRYAN DEARINGER
                                       Trial Attorney
                                       RODNEY PATTON
                                       Trial Attorney
                                       JULIA A. BERMAN (D.C. Bar No. 986228)
                                       Trial Attorney
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave., N.W.
                                       Washington, D.C. 20530
                                       Tel: (202) 616-8480
                                       Fax: (202) 616-8470
                                       *Attorneys for Defendants*